## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL R. WILSON, JR.,            )
                                   )
            Plaintiff,             )        Civil Action No. 1:14-cv-00578-YK
                                   )
      v.                           )
                                   )        (Judge Yvette Kane)
AEROTEK, INC. and JOHN RUDY,       )        (Chief Magistrate Judge Martin C.
                                   )        Carlson)
            Defendants.            )
                                   )

### DEFENDANT AEROTEK'S BRIEF IN SUPPORT OF ITS
### MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Fed. R. Civ. P. 12(c), Defendant Aerotek, Inc. ("Aerotek" or

"Defendant") respectfully moves the Court for an order granting judgment in its

favor on its First Amended Counterclaim (Doc. No. 30) and Counts I, II and III of

Plaintiff Michael Wilson's Counterclaim (Doc. No. 31).

### I.    RELEVANT FACTS AND PROCEDURAL HISTORY

### A.    Wilson's Participation in Aerotek's Incentive Investment Plan

This case arises out of Aerotek's termination of Plaintiff Michael Wilson's

("Wilson" or "Plaintiff") employment.  Aerotek employed Wilson from 1999 until

April 2013.  (Doc. No. 1, ¶ 11; Doc. No. 11, ¶ 4).

On January 1, 2011, through his employment with Aerotek, Wilson was

invited to participate in the Allegis Group's ("Allegis") Incentive Investment Plan

("IIP" or "Plan").  (Doc. No. 30, ¶ 11).  The IIP is an unfunded "top hat" plan

governed by ERISA that provides deferred income to a select number of highly compensated employees of Allegis and its subsidiaries, including Aerotek. (Doc. No. 30, ¶¶ 3 & 7; Doc. No. 31, ¶ 3). IIP participants are eligible to earn IIP Units. A Unit is equivalent to the fair market value of one share of Allegis common stock, plus the excess (if any) of the aggregate cash dividends made by Allegis.[1] (Doc. No. 30, ¶ 9).

In order to earn and become entitled to payment for Units, participants must comply with the terms and conditions of Section 9 of the Plan. (Doc. No. 30, Ex. 1 at 5). These terms and conditions include 30-month restrictive covenants following the employee's separation from employment with Allegis. *Id.* Specifically, Section 9 of the IIP provides, in relevant part, that for 30 months following the employee's separation from employment, the employee may not:

    1) Engage in the business of recruiting, employing and providing the services of scientific, telecommunications, engineering, automotive, technical, information technology, information systems, industrial, office support, financial support, accounting, legal, energy, aviation, environmental and/or other personnel on a temporary or permanent basis, providing information systems, information technology and telecommunications services, or any other lines of business that the Companies engage in, enter or prepare to enter during the Participant's employment with the Companies (collectively, the

---

[1] Units are allocated to accounts of each Participant, but do not give Participants any rights or interest with respect to Allegis' common stock. Also, Units "are not to be considered or deemed wages" and they "shall have no value other than as potentiality of income that may be earned in accordance with the terms and conditions of this Plan."

"Companies Business"), in which the Participant performed work or obtained knowledge and information during the two (2) year period preceding his or her Separation from Service, within a radius of two hundred fifty (250) miles of the office in which the Participant last worked …; [and]

2) Approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of any of the Companies, about which Participant obtained knowledge by reason of Participant's employment by the Companies, in an attempt to: enter into any business relationship with [the] client or customer … or reduce or eliminate the business such client or customer conducts with the Companies.

*Id.* The IIP further provides: "The terms and conditions set forth in this Section 9 are material and essential terms of any award of Units." *Id.* at 7.

**B.    Wilson's Execution of 2010 and 2011 Incentive Investment Plan Award Agreements and his Employment Agreement**

Aerotek offered Wilson a 2010 IIP Award Agreement, awarding him 4,400 Units as of January 1, 2011, which Wilson executed.  (Doc. No. 30, Ex. 2 at 5 & 6).[2]  The following year, Aerotek offered Wilson a 2011 IIP Award Agreement, awarding him 2,960 Units as of January 1, 2012, which Wilson executed on July 23, 2012.  (Doc. No. 30, Ex. 3 at 5 & 6).  Both the 2010 and 2011 IIP Award Agreements expressly provide, in relevant part:

- The award is subject in all respects to the applicable provisions of the Plan, a complete copy of which has been furnished to you and receipt of which you acknowledge by acceptance of the award.  Such provisions are incorporated herein by reference

---

[2] The 2010 IIP Award Agreement is undated; therefore, it is unclear when Wilson executed it.

and made a part hereof.  (Doc. No. 30, Ex. 2 at 2 & Ex. 3 at 2).

- [Y]ou specifically acknowledge and agree that the terms and conditions set forth in Section 9 of the Plan are material and essential terms of our award of Units and your eligibility to earn and receive payment for any vested Units.  (Doc. No. 30, Ex. 2 at 3 & Ex. 3 at 3).

- This Agreement contains the entire agreement between the parties with respect to the subject matter contained herein and may not be modified, except as provided in a written document signed by each of the parties hereto.  (Doc. No. 30, Ex. 2 at 4 & Ex. 3 at 4).

- This Agreement is intended to conform in all respects with, and is subject to all applicable provisions of the Plan, which is incorporated herein by reference.  Inconsistencies between the Agreement and the Plan shall be resolved in accordance with the terms of the Plan.  (Doc. No. 30, Ex. 2 at 4-5 & Ex. 3 at 4-5).

Following Wilson's execution of his 2010 IIP Award Agreement, but before he executed the 2011 IIP Award Agreement, he entered into an employment agreement with Aerotek, which set forth certain terms and conditions of his employment, including but not limited to his salary, confidentiality obligations and at-will status.  (Doc. No. 31, Ex. 1).  The employment agreement also contained 18-month non-compete and non-solicitation covenants with a geographic scope of 100 miles.  *Id.* at 4-6.

Additionally, the employment agreement contains an "Entire Agreement" paragraph, which provides in relevant part:

> This Agreement represents the entire agreement between the parties *with respect to the subject matter covered by this*

4

> *Agreement*. This Agreement supersedes any and all prior
> agreements or understandings, oral or written, between the
> parties hereto *pertaining to the subject matter covered by this*
> *Agreement ….*

*Id.* at 9 (emphasis added).  Wilson executed his employment agreement on or about

March 8, 2012, more than three months before he signed the 2011 IIP Award

Agreement. *Id.* at 10.

### C.   Aerotek's Termination of Wilson's Employment

Aerotek terminated Wilson from employment on April 8, 2013 after

receiving and investigating complaints by Wilson's subordinates. (Doc. No. 11, ¶¶

60-69 & 86).  Approximately one month following Wilson's termination, Aerotek

sent him a letter regarding his ability to earn and receive payment for his vested

units under the IIP. (Doc. No. 30, Ex. 4).  That letter specifically stated:

> Pursuant to the terms of the Plan, your ability to earn and
> receive payment for the units, and the Company's obligation to
> pay you for the value of the units, are subject to your
> compliance with and fulfillment of the terms and conditions
> contained in Section 9 of the [IIP].  You acknowledge and agree
> that any breach or non-performance by you of the terms and
> conditions of Section 9 of the [IIP] will terminate your ability to
> earn the units and release the Company from its payment
> obligations with respect to the vested units allocated to your
> account.  In addition, in such an event, you agree to refund to
> the Company any amounts previously paid to you or applied for
> your benefit with respect to such units.

*Id.*  Wilson signed the letter on June 1, 2013, acknowledging its contents, and

returned it to Aerotek.  *Id.*  Under the terms of the IIP, the 30-month post-

separation period from employment concludes on October 7, 2015. (Doc. No. 31,

¶ 20).  Under the restrictive covenants contained in Wilson's employment agreement, the 18-month post-separation period from employment concluded one year earlier, on October 7, 2014. *Id.*

Following Wilson's termination, Aerotek paid him six (6) quarterly installments of $6,840.00 in accordance with the IIP, a gross sum of $41,040.00. (Doc. No. 30, ¶¶ 23-24).   Aerotek subsequently learned that Wilson was operating a recruiting and staffing agency and engaging in competition in violation of Section 9 of the IIP within the proscribed geographic territory.  (Doc. No. 30, ¶¶ 26-28).  Wilson admits that he engaged in competition with Aerotek as of at least October 9, 2014.  (Doc. Nos. 30 & 31, ¶¶ 26-30).  Upon learning of Wilson's competition, Aerotek ceased outstanding IIP payments to Wilson.  (Doc. No. 30, ¶ 31).

## D.   Procedural History

On March 27, 2014, Wilson filed a Complaint in this Court, alleging Aerotek interfered with his rights under the Family Medical Leave Act ("FMLA"), retaliated against him in violation of the FMLA and defamed him.  (Doc. No. 1). Upon learning of Wilson's competition, Aerotek ceased outstanding IIP payments to Wilson.  (Doc. No. 30, ¶ 31).  Aerotek filed counterclaims against Wilson under ERISA for equitable relief, seeking, *inter alia*, enforcement of the terms of the IIP, including Wilson's repayment of IIP payments, and a declaratory judgment that

Wilson is not entitled to or owed any further IIP payments. (Doc. No. 30, Counts I & II). Wilson, in turn, filed counterclaims against Aerotek, arguing that his employment agreement superseded the IIP Award Agreements. (Doc. No. 31, ¶ 10). The parties filed cross-motions for judgment on the pleadings on June 1, 2015. (Doc. Nos. 34 & 35).

## II.   QUESTION PRESENTED

Was Wilson subject to the 30-month restrictive covenants set forth in Section 9 of the IIP at the time of his termination?

**Suggested Answer:** Yes.

## III.   ARGUMENT

Judgment on the pleadings will be granted where there is no material issue of fact remaining to be resolved, and the movant is entitled to judgment as a matter of law. *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988). The standard of review for a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is identical to that of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Brautigam v. Fraley*, 684 F. Supp. 589, 591 (M.D. Pa. 2010). "The only notable difference between the two standards is that the court, for a motion for judgment on the pleadings, reviews not only the complaint but also the answer and written instruments attached to the pleadings." *Brautigam*, 684 F. Supp. At 591-92 (citation omitted).

Aerotek's motion for judgment on the pleadings should be granted because the subject matter of Wilson's employment agreement is distinct from the subject matter of the IIP and IIP Award Agreements, such that the employment agreement does not supersede the latter. Additionally, even if it did, Wilson was still bound by Section 9 of the IIP when Aerotek terminated his employment because he executed the 2011 IIP Award Agreement on July 23, 2012 – more than three months after he signed his employment agreement.

### A.   Wilson's Employment Agreement Does Not Supersede the IIP or IIP Award Agreements

Wilson argues that his March 2012 employment agreement supersedes the 30-month restrictive covenant contained in Section 9 of the IIP because the former agreement contains an integration clause, which states: "This Agreement represents the entire agreement between the parties *with respect to the subject matter covered by this Agreement*." (Doc. No. 31, Ex. 1 at 9) (emphasis added). Specifically, Wilson argues that, because the employment agreement references incentive pay, it covers the same subject matter as the IIP and IIP Award Agreements and supersedes those agreements.

However, the subject matter of the employment agreement is distinct from that of the IIP and IIP Award Agreements such that the agreements stand together without conflict. This Court has emphasized that, in considering separate writings, "even where there is no specific reference to a prior agreement or prior agreements,

several contracts shall be interpreted as a whole and together." *Kropa v. Cabot Oil and Gas Corp.*, 609 F. Supp. 2d 372, 376-77 (M.D. Pa. 2009). Indeed, in *Allegis Group, Inc. v. Jordan*, Civ. No. GLR-12-2535, 2014 WL 2612604 (D. Md. June 10, 2014), a district court interpreting the same IIP at issue here found that the restrictive covenants in ***both*** former Aerotek employees' employment agreements ***and*** their IIP Award Agreements were enforceable); *see also PNC Mortgage v. Superior Mortgage Corp.*, Civ. No. 09-5084, 2012 WL 628000, at *17-18 (E.D. Pa. Feb. 27, 2012) (rejecting defendant's claim that incentive plan superseded his employment agreement because "[t]he terms of the two contracts are not so inconsistent that they cannot stand together.").

Contrary to Wilson's assertion, his employment agreement does not cover the same "subject matter" as the IIP or the IIP Award Agreements and it would not be inconsistent to interpret them together. Wilson's employment agreement sets forth details of his employment, such as his salary, confidentiality obligations, term of employment and restrictive covenants. Its only reference to incentive pay is a general acknowledgement that Wilson was eligible to receive incentive pay "as may be determined by Aerotek in its sole and absolute discretion from time to time." (Doc. No. 31, Ex. 1 at 3). The employment agreement is silent as to terms on which Wilson could earn incentive pay and any factors Aerotek would consider in awarding incentive pay. *Id.* In other words, if the employment agreement was

the sole document governing Wilson's right to incentive pay, it would be impossible to determine the amount of incentive pay to which he is entitled, or on what terms.

On the other hand, the IIP and the IIP Award Agreements set forth in detail the terms and conditions of participation in the IIP, including administration of the IIP, a participant's eligibility to earn units and receive payments, allocation of units to a participant's account, vesting of units, payments and tax consequences of receipt of payments.  (Doc. No. 30, Exs. 1, 2 & 3).

Further, to the extent Wilson's employment agreement, by virtue of its reference to "incentive pay," covered the same subject matter as the IIP and IIP Award Agreements, then Wilson's execution of the employment agreement would supersede the IIP and the IIP Award Agreements in their entirety – not only the restrictive covenants contained in Section 9 of the IIP – thereby nullifying his entitlement to IIP benefits.  "Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 479, 436-37 (Pa. 2004). Wilson cannot selectively invoke application of the parol evidence rule to preclude provisions of the IIP and IIP Award Agreements unfavorable to him, but allow

those provisions that benefit him to remain in effect.

**B.     Wilson is Bound by Section 9 of the IIP by his Execution of the 2011 IIP Award Agreement**

Even assuming that Wilson's employment agreement superseded the terms of the IIP, which Aerotek disputes, Wilson was still bound by Section 9 of the IIP at the time of his termination by virtue of his execution of the 2011 IIP Award Agreement. The 2011 IIP Award Agreement, which is an integrated contract, offers Wilson 2,960 IIP units subject to the "terms, conditions and restrictions set forth in the Plan." (Doc. No. 30, Ex. 3 at 2). Wilson signed and accepted the 2011 IIP Award Agreement on July 23, 2012, more than three months after he signed the employment agreement. *Id.* at 5 & 6. In doing so, he agreed to comply with Section 9 of the IIP. *See Allegis Group, Inc. v. Jordan*, Civ. No. GLR-12-2535, 2013 WL 1701125, at *2 (D. Md. April 17, 2013) (finding that "the IIP Award Agreements condition payment upon compliance with Section 9 of the IIP … Compliance with these post-employment restrictions is the *only limitation* placed upon the payment of vested Units.") (emphasis added).

In essence, Wilson argues that the integration clause in his employment agreement should be given effect, but that the integration clause in the later-executed 2011 IIP Award Agreement – which contains substantially the same integration language as Wilson's employment agreement – should be disregarded. Such a premise defies logic. By Wilson's own reasoning, if his employment

11

agreement supersedes the 2010 IIP Award Agreement by referencing incentive pay, then the 2011 IIP Agreement necessarily supersedes his employment agreement.

## IV.   CONCLUSION

For the reasons set forth above, Aerotek respectfully requests that the Court grant its motion for judgment on the pleadings.

Respectfully submitted,


*/s/ Emilie R. Hammerstein*
Theodore A. Schroeder (PA #80559)
tschroeder@littler.com
Emilie R. Hammerstein (PA #307499)
ehammerstein@littler.com
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue, 26th Floor
Pittsburgh, PA  15222
412.201.7624/7631
412.774.1959/3756 (fax)

Attorneys for Defendants
Aerotek, Inc. and John Rudy

Dated:  June 15, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June 2015, a copy of **Defendant Aerotek's Brief in Support of its Motion for Judgment on the Pleadings** was filed using the Middle District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

> Solomon Z. Krevsky
> szk@clark-krevskylaw.com
> Clark & Krevsky, LLC
> 20 Erford Road, Suite 300A
> Lemoyne, PA  17043
>
> Bruce J. Warshawsky, Esq.
> bjw@cclawpc.com
> Cunningham & Chernicoff, P.C.
> 2320 North Second Street
> P.O. Box 60457
> Harrisburg, PA  17106-0457

> /s/ Emilie R. Hammerstein
> Emilie R. Hammerstein

Firmwide:134023207.2 071691.1048