## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL R. WILSON, JR.,** | : | **Civil No. 1:14-CV-578** |
| | : | |
| **Plaintiff** | : | **(Judge Kane)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **AEROTEK, INC. and** | : | |
| **JOHN RUDY,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

This is a dispute between the plaintiff, Michael R. Wilson, Jr., and his former employer, Aerotek, Inc., and one of his former supervisors, John Rudy.  Wilson has brought claims alleging that the defendants unlawfully interfered with his efforts to exercise his rights under the Family and Medical Leave Act, 29 U.S.C. §§ 2601, *et seq.*, retaliated against him for exercising or attempting to exercise his rights under the FMLA, and defamed him.  (Doc. 1, Compl.)

The defendants answered the complaint, denying many of the allegations and defending against Wilson's legal claims for relief.  In addition, the defendants brought a counterclaim pursuant to Section 502(e)(2) of the Employee Retirement and Income Security Act, 29 U.S.C. 1132(e)(2) et seq. ("ERISA"), alleging that since separating from employment, Wilson has breached the terms of an Incentive

Investment Plan ("IIP") by competing with Aerotek before the expiration of a 30-month non-compete provision that was a material and enforceable condition of the IIP. Aerotek seeks entry of an order declaring that Wilson is in breach of his contractual obligations, that Aerotek is relieved of its obligations to pay Wilson any further compensation that would have been owed under the IIP, and that the IIP has now been rendered void by Wilson's conduct. Wilson answered the counterclaim by bringing his own claim to be paid amounts he contends he is owed under the IIP.

The parties have now filed cross-motions for judgment on the pleadings. In these cross motions each party acknowledges that the interpretation of these various written agreements between the parties present a question which can be resolved by the Court as a matter of law, although the parties disagree concerning the proper answer to this purely legal question. The motions are fully briefed and ripe for disposition. For the reasons that follow, it will be recommended the Court grant the defendants' motion and deny Wilson's motion. The employment documents, and contractual arrangements, between the parties and governing the terms of Wilson's employment and participation in an IIP make clear that one of the conditions for Wilson's participation in the IIP was agreeing to a 30-month non-compete agreement. Wilson's argument that the 30-month duration of the non-compete agreement was somehow modified or negated by the inclusion of an 18-month non-compete

provision in a separate employment agreement is unpersuasive on the facts in the record and is not supported by persuasive legal authority.

Moreover, four months after Wilson signed the employment agreement containing the 18-month non-compete term, he executed a subsequent IIP agreement in which he expressly agreed to abide by the provision in the IIP setting forth the original 30-month term.  Like another federal court which considered virtually the same issue, we find that the employment agreement and the IIP can be interpreted harmoniously.  However, even if the agreements were in conflict, we would find no basis to conclude that the 18-month non-compete term set forth in the employment agreement would trump the 30-month term that Wilson acknowledged as an obligation of the IIP four months later.  In either event, we find on the basis of the pleadings and the contractual documents that the parties have provided that Wilson's participation in the IIP was contingent upon his agreement not to compete with Aerotek for a period of 30 months, and that Wilson breached this part of the IIP agreement when he began soliciting business within a restricted geographic territory less than 30 months after he separated from employment.  Accordingly, we agree with Aerotek that the IIP is a binding agreement, that Wilson acknowledged his obligations under that agreement, and that Wilson subsequently breached the agreement by competing with Aerotek before he was contractually permitted to do so.

3

## II.   <u>BACKGROUND</u>

The parties do not disagree on the operative facts.  On January 1, 2011, as part of his employment with Aerotek, Wilson was invited to participate in Allegis Group's ("Allegis") Incentive Investment Plan ("IIP" or "Plan").  The IIP is an unfunded "top hat" plan that is governed by ERISA, and is designed to provide deferred income to a select number of highly compensated employees of Allegis and its subsidiaries, including Aerotek.  (Doc. 30, ¶¶ 3, 7; Doc. 31, ¶ 3.)  <u>See also</u> <u>Kemmerer v. ICI Americas Inc.</u>, 70 F.3d 281, 284-85 (3d Cir. 1995) (discussing so-called "top hat" plans).  IIP participants become eligible to earn IIP Units, which are equivalent to the fair market value of one share of Allegis common stock, plus the excess (if any) of the aggregate case dividends made by Allegis.  (Doc. 30, ¶ 9.)

Entitlement to the Units is, however, contingent upon participants complying with the terms and conditions of Section 9 of the IIP.  (Doc. 30, Ex. 1, at 5.)  These terms and conditions include 30-month restrictive covenants that are triggered upon the participating employee's separation from employment with Allegis.  (<u>Id.</u>)  In this regard, Section 9 of the IIP provides, in relevant part, that for 30 months following the employee's separation from employment, the employee may not:

> 1)   Engage in the business of recruiting, employing and providing the services of scientific, telecommunications, engineering, automotive,

4

technical, information technology, information systems, industrial, office support, financial support, accounting, legal, energy, aviation, environmental and/or other personnel on a temporary or permanent basis, providing information systems, information technology and telecommunications services, or any other lines of business that the Companies engage in, enter or prepare to enter during the Participant's employment with the Companies (collectively, the "Companies Business"), in which the Participant performed work or obtained knowledge and information during the two (2) year period preceding his or her Separation from Service, within a radius of two hundred fifty (250) miles of the office in which the participant last worked . . . ; [and]

2)    Approach, contact, solicit or induce any individual, corporation or other entity which is a client or customer of any of the Companies, about which Participant obtained knowledge by reason of Participant's employment by the Companies, in an attempt to: enter into any business relationship with [the] client or customer . . . or reduce or eliminate the business such client or customer conducts with the Companies.

(Id.) The IIP provides that "[t]he terms and conditions set forth in this Section 9 are material and essential terms of any award of Units." (Id. at 7.)

Wilson was offered a 2010 IIP Award Agreement, which provided him with 4,400 Units as of January 1, 2011. Wilson executed this agreement. (Doc. 30, Ex. 2 at 5 and 6.) Thereafter, Aerotek offered Wilson a 2011 IIP Award Agreement, awarding him 2,960 Units as of January 1, 2012, which Wilson signed on July 23,

2012.  (Doc. 30, Ex. 3 at 5 and 6.)  The 2010 and 2011 Award Agreements provide, in part:

- The award is subject in all respects to the applicable provisions of the Plan, a complete copy of which has been furnished to you and receipt of which you acknowledge by acceptance of the award. Such provisions are incorporated herein by reference and made a part hereof.  (Doc. 30, Ex. 2 at 2 and Ex. 3 at 3.)

- [Y]ou specifically acknowledge and agree that the terms and conditions set forth in Section 9 of the Plan are material and essential terms of our award of Units and your eligibility to earn and receive payment for any vested Units.  (Doc. 30, Ex. 2 at 3 and Ex. 3 at 3.)

- This agreement contains the entire agreement between the parties with respect to the subject matter contained herein and may not be modified, except as provided in a written document signed by each of the parties hereto.  (Doc. 30, Ex. 2 at 4 and Ex. 3 at 4.)

- This Agreement is intended to conform in all respects with, and is subject to all applicable provisions of the Plan, which is incorporated herein by reference.  Inconsistencies between the Agreement and the Plan shall be resolved in accordance with the terms of the Plan.  (Doc. 30, Ex. 2 at 4-5 and Ex. 3 at 4-5.)

After Wilson had executed the 2010 IIP Award Agreement, but before he signed the 2011 IIP Award Agreement, he entered into an employment agreement (the "Employment Agreement") with Aerotek, which set forth terms and conditions of his employment, including his salary, confidentiality obligations, and at-will status.  (Doc. 31, Ex. 1.)  The Employment Agreement provided 18-month non-compete and

6

non-solicitation covenants applicable within a geographic radius of 100 miles.  (Id.

at 4-6.)  The Employment Agreement also contains a clause providing that it is the

exclusive agreement with respect to its subject matter:

> This Agreement represents the entire agreement between
> the parties with respect to the subject matter covered by
> this Agreement.  This Agreement supersedes any and all
> prior agreements or understandings, oral or written,
> between the parties hereto pertaining to the subject matter
> covered by this Agreement . . . .

(Id. at 9.)  Wilson signed the Employment Agreement on March 8, 2012, just a few

months before he signed the 2011 IIP Award Agreement.  (Id. at 10.)

On or about April 8, 2013, Aerotek terminated Wilson's employment.  (Doc.

11, ¶¶ 60-69, 86.)  Roughly one month later, Aerotek wrote to Wilson to remind him

of his commitments under the IIP Agreements:

> Pursuant to the terms of the Plan, your ability to earn and
> receive payment for the units, and the Company's
> obligation to pay you for the value of the units, are subject
> to your compliance with and fulfillment of the terms and
> conditions contained in Section 9 of the [IIP].  You
> acknowledge and agree that any breach or non-
> performance by you of the terms and conditions of Section
> 9 of the [IIP] will terminate your ability to earn the units
> and release the Company from its payment obligations with
> respect to the vested units allocated to your account.  In
> addition, in such an event, you agree to refund to the
> Company any amounts previously paid to you or applied
> for your benefit with respect to such units.

(Doc. 30, Ex. 4.) Wilson signed this letter on June 1, 2013, thereby acknowledging his obligations, and returned it to Aerotek. (Id.) It is undisputed that under the terms of the IIP, the 30-month post-separation period concluded on October 7, 2015. (Doc. 31, ¶ 20.) Under the terms of the Employment Agreement, the restrictive covenants restricting Wilson's ability to work and compete with Aerotek expired on October 7, 2014. (Id.)

After his termination, Wilson received six quarterly installments of $6,840.00, which is the amount called for under the IIP, for a gross sum of $41,040.00. (Doc. 30, ¶¶ 23, 24.) It is undisputed that prior to the expiration of the 30-month non-compete period prescribed by the IIP, but after the expiration of the 18-month period prescribed by the Employment Agreement, Wilson was operating a recruiting and staffing agency, and engaging in competition, within the proscribed geographic territory. (Doc. 30, ¶¶ 26-28; Doc. 31, ¶¶ 26-30.) When Aerotek became aware of the competition, the company discontinued making IIP payments to Wilson.

Wilson filed suit in this Court on March 27, 2014. As noted, Wilson alleged that Aerotek interfered with his rights under the FMLA, retaliated against him in violation of the FMLA, and defamed him. (Doc. 1.) Aerotek answered the complaint and filed counterclaims under ERISA for equitable relief, seeking enforcement of the IIP, including the repayment of the IIP payments Wilson received, and a declaratory

8

judgment that Wilson is not entitled to any further payments. (Doc. 30.) This inspired Wilson to file counterclaims against Aerotek, claiming that the Employment Agreement superseded the IIP Award Agreements, and should be deemed controlling with respect to the duration of the non-compete term. (Doc. 31.) Wilson also insists that the Employment Agreement somehow modified that aspect of the IIP, but otherwise was integrated with the IIP so as to remain an enforceable agreement under which Wilson is entitled to receive payment. The parties filed cross-motions for judgment on the pleadings on June 1, 2015. (Docs. 34, 35.)

## III.   <u>STANDARD OF REVIEW</u>

Motions for judgment on the pleadings are governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and, thus, the movant is required "'to clearly establish [] that not material issues of fact remains to be resolved and that he is entitled to judgment as a matter of law." <u>Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.</u>, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting <u>Jablonski v. Pan Am. World Airways, Inc.</u>, 863 F.2d 289, 290-91 (3d Cir. 1988)).

A district court applies the same standard to a motion for judgment on the pleadings as to a motion to dismiss filed pursuant to Rule 12(b)(6).  Thus, when reviewing a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party.  Green v. Fun Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993).  This requires a three-step process:

> First, the court mst "take[] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the presumption of truth." Id. at 1950. Third, whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.  This means that [the] inquiry is normally broken into three parts:  (1) identifying the elements of the claim (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011), as amended (June 6, 2011).

Finally, when adjudicating a motion for judgment on the pleadings, the court generally should consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any

matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

## IV.   **DISCUSSION**

Wilson's argument is straightforward, but ultimately is unpersuasive:  he argues that the Employment Agreement, which contains an 18-month non-compete signed in March 2012, preempts the 30-month restrictive covenant set forth in Section 9 of the IIP.   Wilson apparently predicates this argument on the Employment Agreement's integration clause, which provides that "[t]his Agreement represents the entire agreement between the parties with respect to the subject matter covered by this Agreement." (Doc. 31, Ex. 1 at 9.)  Wilson contends that because the Employment Agreement refers in a very small way to incentive pay, it necessarily covers the same subject matter as the IIP and IIP Award Agreements, and, therefore, supersedes those agreements.  As Aerotek persuasively demonstrates, however, the various agreements can be, and have been, interpreted harmoniously, since the Employment Agreement scarcely touches on the subject of incentive pay, whereas the IIP covers it specifically and in detail.

This Court has recognized that when analyzing separate contracts, "even where there is no specific reference to a prior agreement or prior agreements, several

contracts shall be interpreted as a whole and together." Kropa v. Cabot Oil and Gas Corp., 609 F. Supp. 2d 372, 376-77 (M.D. Pa. 2009). In a consistent manner, another district court that interpreted the same IIP that is at issue in this case found that the restrictive covenants in former Aerotek employees' employment agreements and their IIP Award Agreements were separately enforceable. See Allegis Group, Inc. v. Jordan, Civ. A. No. GLR-12-2535, 2014 WL 2612604 (D. Md. June 10, 2014); cf. PNC Mortgage v. Superior Mortgage Corp., Civ. A. No. 09-5084, 2012 WL 628000, at *17-18 (E.D. Pa. Feb. 27, 2012) (denying a defendant's argument that an incentive plan trumped the terms of an employment agreement since "[t]he terms of the two contracts are not so inconsistent that they cannot stand together."). We agree with the defendants that the law is clear that where multiple employment agreements can be construed together, they should be.

With this basic principle of contract interpretation in mind, we consider Wilson's assertion that the Employment Agreement supersedes and supplants the IIP and IIP Award Agreements. Wilson's Employment Agreement covers a number of details of his employment, including salary, confidentiality obligations, term of employment and certain restrictive covenants. However, as the defendants note, the only reference to incentive pay – the very subject of the IIP and IIP Award Agreements – is the recognition that Wilson was eligible to receive incentive pay "as

may be determined by Aerotek in its sole and absolute discretion from time to time." (Doc. 31, Ex. 1 at 3.)  The Employment Agreement does not provide any specific terms under which Wilson was eligible to earn incentive pay, or the relevant factors that might induce Aerotek to make an award of incentive pay.

The defendants are thus right to argue that the Employment Agreement provides no description of any kind with respect to how incentive pay would be calculated or the terms pursuant to which Wilson would be paid – topics that the IIP and IIP Award Agreements cover in detail.  The IIP and IIP Award Agreements specify a participant's eligibility to earn units and receive payments, allocation of units to a participant's account, vesting, payment administration, and tax consequences that flow from the receipt of payments.  (Doc. 30, Exs. 1, 2 and 3.) Wilson has not persuasively argued or shown that the Employment Agreement cannot stand side-by-side with the IIP and IIP Award Agreements, and we do not agree that the Employment Agreement, with its fleeting reference to the potential availability for earning incentive pay, supplanted the IIP and IIP Award Agreements, or that it modified only the duration of the non-compete period specified in the IIP and IIP Award Agreements, which Wilson acknowledged in writing after signing the Employment Agreement that he now argues modified that term.

Furthermore, we agree with the defendants that even if the various employment contracts could not be enforced together, Wilson would still remain bound by the 30-month restrictive covenants set forth in Section 9 of the IIP because he signed the 2011 IIP Award Agreement four months after signing the Employment Agreement. (Doc. 30, Ex. 3.)  Wilson's only real challenge to the enforceability of the 2011 IIP Award Agreement is to argue that it is not a binding contract in that it was not supported by adequate and independent consideration, and also does not contain an integration clause.  (Doc. 38, at 8-9.)  We agree with the defendants that this argument is unavailing and is dispelled by the 2011 IIP Award Agreement itself.

It is clear from the face of the document that the IIP Award Agreement provides Wilson with substantial valuable consideration, since it offers him 2,960 IIP Units in exchange for his agreeing to comply with Section 9's restrictive covenants. (Doc. 30, Ex. 3 at 2.)  Wilson argues that there was no additional consideration to support the IIP Award Agreement separate and apart from the original IIP (Doc. 38, at 8 n.2), but the defendants note that the IIP Award Agreements are the only vehicle by which IIP Units are actually awarded, since the IIP itself provides only the "each year . . . [the Committee] shall determine the number of Units such Participant is eligible to earn . . . ." (Doc. 30, Ex. 1 at 5 ¶ 6.)  In Jordan, supra, the district court likewise found that Units are awarded through the IIP Award Agreements.  See

14

Jordan, 2013 WL 1701125, at *3 (D. Md. April 17, 2013) ("Allegis awards Units through IIP Award Agreements, which employees must sign each time they earn Units.").

We also agree that the IIP and the IIP Award Agreements work in tandem to provide that the IIP Award Agreements are subject to the provisions of the IIP which are specifically incorporated by reference, including Section 9 of the IIP, as "material and essential terms of your award of Units and your eligibility to earn and receive payment for any vested Units." (Doc. 30, Ex. 3 at 2-3.) Wilson argues that Aerotek somehow modified or amended Section 9 of the IIP when it entered into the separate Employment Agreement, but Wilson makes no compelling legal argument in support of that view, and we do not find it to have merit.

Moreover, and finally, Wilson has no persuasive argument in opposition to Aerotek's assertion that the 2011 IIP Award Agreement is, in fact, an integrated contract that sets forth the entire agreement of the parties with respect to incentive pay and incorporates the restrictive covenants set forth in Section 9 of the IIP. Indeed, Paragraph 6 of the 2011 IIP Award Agreement provides that "[t]his Agreement contains the entire agreement of the parties with respect to the subject matter contained herein and may not be modified, except as provided in a written document signed by each of the parties hereto." (Doc. 30, Ex. 3 at 4.) In contrast to

Wilson, we find that the IIP Award Agreements are integrated contracts that enforceable as written, and which were not modified or amended by the Employment Agreement.

## V.   **RECOMMENDATION**

For the foregoing reasons, IT IS HEREBY RECOMMENDED THAT Aerotek's motion for judgment on the pleadings (Doc. 35.) be GRANTED and that Wilson's cross-motion for judgment on the pleadings (Doc. 34.) be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 17th day of November 2015.

*__S/Martin C.  Carlson__*
Martin C. Carlson
United States Magistrate Judge